<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHAMBERS OF<br>**SUSAN D. WIGENTON**<br>UNITED STATES DISTRICT JUDGE | MARTIN LUTHER KING COURTHOUSE<br>50 WALNUT ST.<br>NEWARK, NJ 07101<br>973-645-5903 |

March 2, 2026

Ingrid Eicher, AUSA
U.S. Department of Justice – USAO
District of New Jersey
970 Broad Street
Newark, NJ 07102
*Counsel for Plaintiff*

Lorraine S. Gauli-Rufo, Esq.
LGR Law, LLC .
6 Pompton Avenue
Suite 25
Cedar Grove, NJ 07009
*Counsel for Defendant Mosby*

## <u>LETTER OPINION FILED WITH THE CLERK OF THE COURT</u>

   Re:  *USA v. Hassan Mosby*, **Crim. No. 20-510 (SDW)**

Counsel:

   Before this Court is Defendant Hassan Mosby's ("Defendant") Motion for a Sentence Reduction pursuant to the First Step Act ("FSA"), 18 U.S.C. § 3582(c)(1)(A)(i) (D.E. 48 ("Motion" or "Mot.")).  For the reasons set forth herein, Defendant's Motion is **DENIED**.

## I.   <u>BACKGROUND AND PROCEDURAL HISTORY[1]</u>

   On October 12, 2019, law enforcement from the Jersey City Police Department arrested Defendant following their response to reports of shots fired in the Martin Luther King Drive area between Woodlawn and Armstrong Avenues in Jersey City.  (D.E. 38 ("PSR") ¶¶ 6, 8.)  At the

---

[1] This Court writes only for the parties and accordingly limits its discussion of the factual and procedural background to only the facts pertinent to the instant decision.

time of his arrest, there was a pending warrant for Defendant's arrest for an unrelated state charge involving a drug conspiracy.  (PSR ¶¶ 56–57; Mot. at 2.)  The State issued detainers for both the drug conspiracy and shooting, but the drug conspiracy detainer lodged first.[2]  (Mot. at 2.)  Accordingly, Defendant was detained at the Hudson County Correctional Center and remained in state custody until November 3, 2021 when he was released to federal custody by a *nunc pro tunc* order.  (PSR ¶ 6; Mot. at 3; D.E. 48-2, Def. Ex. A.)

On December 11, 2019, the federal government filed a one-count criminal complaint charging Defendant with a violation of 18 U.S.C. § 922(g)(1) for possession of a firearm by a convicted felon.[3]  (D.E. 1.)  On June 15, 2020, Defendant was indicted on the same offense.  (D.E. 17 ("Indictment"); D.E. 34 at 1.)  On May 25, 2021, Defendant pleaded guilty to the Indictment.  (D.E. 32–34.)  On November 15, 2021, this Court sentenced Defendant to 84 months' imprisonment—a sentence consistent with his plea agreement and the Final Presentence Report ("PSR").[4]  Notwithstanding Defendant's request that his time in state custody be credited towards his federal sentence, the undersigned deferred to the Bureau of Prisons ("BOP") "to make an assessment as to when credit for time served" began.  (D.E. 43 ("Sentencing Tr.") 21:13–16.)  The BOP gave Defendant twelve days of jail credit time.  (D.E. 48-3, Def. Ex. B at 1.)  The time Defendant spent in state custody was credited towards his state sentence.  (Def. Ex. C at 3.)

On March 15, 2022, Defendant submitted a request for compassionate release to the warden of Federal Correctional Institution ("FCI") Schuylkill, a BOP facility located in Pennsylvania.  (Mot. at 7.)  His request was denied on or about May 20, 2022.  (*Id.*)  Thereafter, he submitted the instant Motion to this Court on March 24, 2024.  (D.E. 48.)  The Government opposed the Motion on June 10, 2024.  (D.E. 51.)  The BOP's Inmate Locator indicates that Defendant has since been transferred from FCI Schuylkill to a Residential Reentry Management field office in Philadelphia, Pennsylvania.

## II.    DISCUSSION

Defendant filed his Motion pursuant to the FSA.  He argues that the following combination of factors constitute extraordinary and compelling circumstances meriting a reduction in sentence: (1) that the 688 days he spent in state custody were not credited towards his federal sentence given the way the detainers against him were lodged, resulting in disparate treatment between him and similarly situated defendants; (2) U.S. Sentencing Guideline ("U.S.S.G.") § 5G1.3(d)'s Policy Statement, which imbues courts with discretion to provide reasonable punishment; and (3)

---

[2] Ultimately Defendant received a fourteen-year sentence for the drug conspiracy offense, to run concurrent to his federal sentence.  (D.E. 48-4, Def. Ex. C at 1.)

[3] As a result, the corresponding state charges related to the shooting were dismissed on December 26, 2016. (PSR ¶ 6.)

[4] In the Plea Agreement, the parties agreed that "the total Guidelines offense level applicable to MOSBY [was] 21," that a sentence within the Guidelines range would be reasonable, and that neither party would seek an upward or downward departure, adjustment, or variance.  (D.E. 34 at 9 ¶¶ 10–11.)  The PSR calculated the total offense level at 21, found Defendant had a criminal history category of VI, and recommended a sentencing range of 77 to 96 months.  (D.E. 38 ("PSR") at 9–10, 21, 30.)

rehabilitative efforts and employment responsibilities taken on by Defendant during his incarceration. (Mot. at 1–2.)  The Government opposed the Motion on June 10, 2024. (D.E. 51.)  It argues that this Court lacks jurisdiction over Defendant's request, which should have been presented as a petition for writ of *habeas corpus*.  (D.E. 51 ("Opp.") at 2.)

### A. Jurisdictional Issue

This Court lacks jurisdiction over the portion of Defendant's Motion challenging how the BOP characterized the time he spent in state custody.  The Attorney General, who acts through the BOP, has the authority to "calculate a federal sentence and provide credit for time served." *Goodman v. Grondolsky*, 427 F. App'x 81, 82 (3d Cir. 2011) (citing *United States v. Wilson*, 503 U.S. 329, 333–35 (1992)).  Pursuant to 18 U.S.C. § 3585(b), the BOP determines whether a defendant is entitled to any credits towards his sentence "for any time he has spent in official detention prior to the date the sentence commences," due to the offense for which sentence was imposed or for any other charge for which the defendant was arrested subsequent to the offense for which sentence was imposed.  "A challenge to the BOP's execution of a sentence is properly brought under 28 U.S.C. § 2241." *Burkey v. Marberry*, 556 F.3d 142, 146 (3d Cir. 2009).  Here, Defendant challenges the BOP's failure to credit the time he spent in state custody towards his federal sentence.  This challenge is not properly before this Court given that Defendant did not file a *habeas* petition.  *See id.*

### B. First Step Act Analysis

To the extent this Court has jurisdiction over Defendant's Motion, this Court addresses the merits of his remaining arguments for a sentence reduction.

#### 1. Administrative Exhaustion Requirement

As a preliminary matter, the FSA requires a defendant seeking a sentence reduction to satisfy the procedural prerequisites set forth in § 3582(c)(1)(A) for judicial review.  *United States v. Epstein*, No. 14-287, 2020 WL 1808616, at *2 (D.N.J. Apr. 9, 2020).  A defendant may only move for a sentence reduction after "fully exhaust[ing] all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  18 U.S.C. § 3582(c)(1)(A).  Here, Defendant made his request on March 15, 2022 and it was denied on May 20, 2022. (Mot. at 7.)  Accordingly, Defendant satisfied the statutory administrative exhaustion requirement and was free to move before this Court.

#### 2. Extraordinary and Compelling Reasons

Although a district court generally has a limited ability to modify a federally imposed sentence once it commences, *Dillon v. United States*, 560 U.S. 817, 824–25 (2010), the FSA permits district courts to grant compassionate releases where "extraordinary and compelling reasons exist" meriting a sentence reduction, 18 U.S.C. § 3582(c)(1)(A)(i).  Under the FSA, a defendant seeking a sentence reduction bears the burden of showing both his eligibility and qualification for a reduction.  *United States v. Rutherford*, 120 F.4th 360, 364 (3d Cir. 2024) (explaining that a sentencing court must conduct the eligibility inquiry prior to the qualification inquiry and that these inquiries "sound similar, but . . . are distinct").  Under the eligibility inquiry,

the sentencing court considers the threshold question of whether the defendant has established "extraordinary and compelling reasons warrant[ing]" a reduction.  18 U.S.C. § 3582(c)(1)(A)(i). Then, the court considers the § 3553(a) factors, "to the extent they are applicable."  *Id.* § 3582(c)(2).

Defendant has not demonstrated extraordinary and compelling reasons meriting a reduction in sentence.  "When determining whether a defendant's reasons are 'extraordinary and compelling,' district courts may look to statutory text, dictionary definitions, and the policy statement [in U.S.S.G. § 1B1.13] to 'give shape to the otherwise amorphous phrase.'"  *United States v. Bouza*, No. 21-350, 2025 WL 2056484, at *2 (D.N.J. July 22, 2025) (quoting *United States v. Andrews*, 12 F.4th 255, 260 (3d Cir. 2021)); *see also Andrews*, 12 F.4 at 260 (holding that while U.S.S.G. § 1B1.13's policy statement is not binding on district courts, it can guide the courts' discretionary decision without being conclusive).

Defendant relies on his rehabilitative efforts and U.S.S.G. § 5G1.3's policy statement in support of his Motion.[5]  The latter merely recognizes this Court's discretion in fashioning a reasonable sentence.  The former, by itself, is not an extraordinary and compelling reason.  *See* U.S.S.G. § 1B1.13(d) ("[R]ehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement.").  While this Court acknowledges and commends Defendant's efforts toward rehabilitation, these are actions that the law expects defendants to take and do not serve to mitigate the serious conduct that Defendant committed.

At sentencing this Court considered a Guidelines-suggested range of 77 to 96 months and the Government asked for a sentence at the top of that range.  (Sentencing Tr. 12:1–4, 18:2–3.) Noting that although a sentence at the top of the range would have been reasonable given the seriousness of the conduct at issue and Defendant's extensive criminal history, this Court chose to impose a sentence in the middle of the range after considering the circumstances and Defendant's history and characteristics.  (Sentencing Tr. 16:13-17, 18:2–18, 19:1–21.)  Defendant's Motion does not present extraordinary and compelling reasons meriting the exercise of this Court's discretion to interfere with, and reduce, its previously imposed sentence of 84 months.

## III.    **CONCLUSION**

For the foregoing reasons, Defendant's Motion is **DENIED**.

/s/ Susan D. Wigenton
**SUSAN D. WIGENTON, U.S.D.J.**

Orig:  Clerk
cc:      Parties

---

[5] U.S.S.G. § 5G1.3's policy statement read as follows:  "In any other case involving an undischarged term of imprisonment, the sentence for the instant offense may be imposed to run concurrently, partially concurrently, or consecutively to the prior  undischarged term of imprisonment to achieve a reasonable punishment for the instant offense."  *See United States v. Brannan*, 74 F.3d 448, 450 n.2 (3d Cir. 1996) (noting that district courts normally apply the Guideline in effect at the time of resentencing unless doing so would violate the *ex post facto* clause of the United States Constitution by yielding a harsher result).

4